MAMFRED L. GAMSON *vs.* WILLIAM P. PRITCHARD
& another, executors.

Bristol.   October 23, 1911. — November 29, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, & DeCOURCY, JJ.

*Pledge.   Sale.   Replevin.*

At the trial of a writ of replevin against a deputy sheriff for a wagon which the defendant had attached on mesne process as the property of a partnership, there was evidence tending to show that the plaintiff had purchased the wagon for the partnership, that a bill of parcels thereof bearing the plaintiff's name as purchaser was given by the vendor to the plaintiff, and that the plaintiff's agreement with the partnership was that he "was going to own" the wagon until the partnership had paid him what he had advanced as the purchase price. The partnership took possession of the wagon directly from the vendor, and the plaintiff allowed them to retain possession until, after some time, the debt of the partnership to him remaining unpaid, he took the wagon and placed it in a yard from whose owner he had received permission thus to place it and where it was attached by the defendant. The presiding judge refused to order a verdict for the defendant. *Held,* that the refusal was proper, since the executory agreement to pledge the wagon became effectual as a pledge upon the plaintiff taking possession of the wagon before the attachment, and that, the attachment being an unjustifiable interference with the plaintiff's rights, he could maintain replevin to recover possession.

REPLEVIN of a barrel wagon which the defendants' testate, William Pritchard, a deputy sheriff of Bristol County against whom the action orginally was brought, had attached on mesne process as the property of Joseph Blumberg and Edward Gamson, copartners doing business as the Bay State Barrel Company. Writ in the Second District Court of the County of Bristol dated March 6, 1909.

On appeal to the Superior Court the case was tried before *Raymond,* J.   There was evidence tending to show the following facts: The plaintiff was a brother of Edward Gamson, one of the copartners above described.   The copartners went to the plaintiff for his help in purchasing a barrel wagon and the plaintiff told them in substance that he would advance the money for the wagon, but that he was going to "own the team until they pay me back."   He testified, "I told them that I would buy them that team and I shall have the receipt and after they

pay me back the $65 I will give them a receipt and they can have the wagon. I wanted that as security." The copartners and the plaintiff then went to one Dunn, to whom the plaintiff paid $10 on account of a purchase price of $65 for the wagon and received from Dunn a statement reciting, "Mamfred L. Gamson, to John W. Dunn, Dr., . . . Sept. 30, 1908. To one barrel wagon, $65. Cr. by cash, $10, balance to be paid when team is taken the same to be moved by Oct. 7, 1908." Later the plaintiff paid the copartners $55 and on October 7, 1908, they paid that amount to Dunn, who indorsed on the above statement, " Received payment in full Oct. 7, 1908." The partners then received the wagon from Dunn and used it, it never being in the plaintiff's possession until, at some time before the attachment by the defendants' testate, the plaintiff had it taken from the partnership's place of business to the yard of a brewery, from whose proprietor the plaintiff had obtained permission to put it there.

At the close of the evidence the defendants asked the presiding judge to order a verdict for them. The judge refused to do so and the case was submitted to the jury " on full instructions which were not excepted to."

The jury found for the plaintiff; and the defendants alleged exceptions.

*F. A. Pease,* for the defendants.

*D. Silverstein,* for the plaintiff.

BRALEY, J. The distinction between a mortgage and pledge of personal property frequently has been pointed out, but whether the transaction shall be treated as having the characteristics of one form of security rather than the other often must rest on the intention and conduct of the parties to be ascertained from the evidence. The question is for the jury under appropriate instructions. *Thompson* v. *Dolliver,* 132 Mass. 103.

The bill of parcels, even if the plaintiff was named as the buyer, contains no condition of defeasance, or stipulation that he is to hold the title as collateral security, and on its face the transaction did not amount to a mortgage. *Shaw* v. *Silloway,* 145 Mass. 503. *Copeland* v. *Barnes,* 147 Mass. 388. But the dominant purpose to secure the plaintiff in some form for money lent is free from doubt. The defendants offered no evidence to

contradict his statement, that at the request of the partnership known as the Bay State Barrel Company he advanced the price for the wagon with the understanding that the bill of parcels should run directly to him, and that the property was to be considered as security until the loan had been repaid, but that he did not take possession, and after the purchase it was delivered to the company, and used in their business. The general title having passed to the company, if the wagon then had been delivered to the plaintiff he would have become a pledgee, and actual and continuous possession by him would have been essential to preserve the lien. *Radigan* v. *Johnson*, 174 Mass. 68, 73. *Harding* v. *Eldridge*, 186 Mass. 39, 42, 43. But if a mere agreement that the creditor shall hold certain property of the debtor as security is insufficient, a pledge takes effect upon delivery and, no adverse rights having intervened, the plaintiff's actual possession of the wagon which he had taken under the bailment prior to the attachment by a creditor of the firm, although subsequent to the contract, was effectual, and completed the pledge. The executory agreement to pledge the property had become executed. *Copeland* v. *Barnes*, 147 Mass. 388, 390. *Parshall* v. *Eggert*, 54 N. Y. 18.

The attachment having been an unjustifiable interference with the plaintiff's rights, he can maintain replevin against the attaching officer to recover possession. *Way* v. *Davidson*, 12 Gray, 465. *Johnson* v. *Neale*, 6 Allen, 227.

It is stated in the record that full instructions were given which apparently were satisfactory to the defendants, and, the verdict for the plaintiff having been warranted by the evidence, the exceptions must be overruled.

*So ordered.*